UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America, | CR 07-323 (DWF/FLN) |
| Plaintiff, | |
| V. | **REPORT AND RECOMMENDATION** |
| Humberto Lugo-Olivares, Jr., 01, Samuel Isaiah Garza, 04, | |
| Defendants. | |

Tracy L. Perzel, Assistant United States Attorney, for the Government.
Andrea K. George for Defendant Lugo-Olivares.
Daniel L. Gerdts for Defendant Garza.

**THIS MATTER** came before the undersigned United States Magistrate Judge on October 24, 2007, on Defendant Lugo-Olivares's Motion to Suppress Evidence Obtained as a Result of Search and Seizure [#93], Defendant Lugo-Olivares's Motion to Suppress Statements, Admissions, and Answers [#94], Defendant Lugo-Olivares's Motion to Suppress Eyewitness Identifications [#98], Defendant Garza's Motion to Suppress All Electronic Surveillance Evidence and Any Evidence Derived Therefrom [#85], Defendant Garza's Motion to Suppress All Evidence Obtained From Unlawful Searches and Seizures [#86], and Defendant Garza's Motion to Suppress Statements Made By Defendant [#87]. At the hearing, the Court heard testimony from Detective David McKichan of the Austin Police Deparment.

The Government submitted four exhibits into evidence.[1] During the motions hearing, Defendant Lugo-Olivares's Motion to Suppress Eyewitness Identifications [#98] and Defendant Garza's Motion to Suppress Statements Made By Defendant [#87] were orally denied as moot based upon the Government's representation that there were no eyewitness identifications of Defendant Lugo-Olivares and no custodial statements by Defendant Garza. The only issues before the Court is whether evidence seized pursuant to Exhibit 1 is admissible, the interrogation of Defendant Lugo-Olivares is admissible, and audio recorded conversations of Defendant Garza are admissible. The matter was referred to the undersigned for Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. For the reasons which follow, this Court recommends Defendants' remaining motions be denied.

## I. FINDINGS OF FACT

Detective McKichan testified regarding the investigation of the Defendants. Detective McKichan is a employed by the Austin Police Department with over 10 years of experience. He is also a member of the Southeast Minnesota Narcotics and Gang Taskforce. In those capacities, he has participated in numerous narcotics investigations. Detective McKichan provided the affidavits to support the two search

---

[1] Gov't Ex. 1: Application for Search Warrant and Supporting Affidavit, Search Warrant and Search Warrant Return from August 10, 2007.
Gov't Ex. 2: Audio recording of Defendant Lugo-Olivares Jail Interview from August 14, 2007.
Gov't Ex. 3: Transcript of Defendant Lugo-Olivares Jail Interview from August 14, 2007.
Gov't Ex. 4: Application for Search Warrant and Supporting Affidavit, Search Warrant and Search Warrant Return from April 27, 2007.

warrants in this case, he participated in the questioning of Defendant Lugo-Olivares, and had personal knowledge of the recorded conversations with Defendant Garza.

**A.      Search Warrant for 3rd Avenue Duplex and the North Main Street Property**

On August 10, 2007, Detective McKichan applied for a search warrant in Mower County District Court. The application sought a warrant to search the person of both Defendants, both units of a duplex on 3rd Avenue SW in Austin, Minnesota, a property on North Main Street in Austin, Minnesota, a property on East Oakland Place in Austin, Minnesota, and nine automobiles. Defendants Lugo-Olivares and Garza challenge the issuance of a search warrant for the 3rd Avenue duplex and the North Main Street property. The following information relates to probable cause to search these two properties and is taken from Detective McKichan's affidavit in support of the application for search warrant. (*See* Ex. 1.)

Detective McKichan's affidavit described the undercover activities of Investigator Gunderson of the Dodge County Sheriff's Office. Investigator Gunderson met with Defendant Lugo-Olivares on June 24, 2007, and June 27, 2007, to discuss the distribution of narcotics. During these conversations, Defendant Lugo-Olivares described the narcotics trafficking organization to Investigator Gunderson.

On June 29, 2007, Investigator Gunderson met Defendant Lugo-Olivares at a bar in Austin, Minnesota. After meeting at the bar, Investigator Gunderson and Defendant Lugo-Olivares went to the property on North Main Street. Defendant Lugo-Olivares told Investigator Gunderson that he and another man were planning on opening a dance club in the space. During their conversations, Investigator Gunderson agreed to purchase two pounds of marijuana on July 2, 2007. The narcotics transaction did not occur on July 2, 2007, and was rescheduled for July 8, 2007.

On July 8, 2007, Investigator Gunderson met Defendant Lugo-Olivares at the North Main Street

property. Defendant Lugo-Olivares ordered another man to go pick-up the marijuana. A man left the North Main Street property and when he returned he placed a package containing marijuana in Investigator Gunderson's automobile. While waiting for the marijuana to arrive, Investigator Gunderson gave money to Defendant Lugo-Olivares for the drug transaction.

On July 20, 2007, Investigator Gunderson was to meet Defendant Lugo-Olivares at the North Main Street property to purchase an ounce of cocaine at 2:00 p.m. Prior to the transaction, Detective McKichan established surveillance on Defendant Lugo-Olivares at the North Main Street property. Detective McKichan observed Defendant Lugo-Olivares and two other men leave the North Main Street property, stop briefly at the 3rd Avenue duplex, travel to a Holiday Inn, and then travel back to the North Main Street property to deliver the narcotics to Investigator Gunderson. When the men arrived back at the North Main Street property, Investigator Gunderson was present and he purchased 40 grams of cocaine.

On July 23, 2007, Investigator Gunderson arranged for the purchase of two ounces of cocaine. Detective McKichan observed the person who was to deliver the narcotics stop at the duplex on 3rd Avenue prior to meeting Investigator Gunderson and selling him two ounces of cocaine.

On July 30, 2007, Detective McKichan collected the garbage from outside the 3rd Avenue duplex. In the garbage was a zip lock bag top. The top of the zip lock bag was distinctive and matched the zip lock bag used on the cocaine transaction on July 20, 2007.

On July 31, 2007, Detective McKichan received information from a confidential reliable informant regarding narcotic purchases from the 3rd Avenue South duplex. The confidential reliable informant told law enforcement he gave a friend a ride to the duplex to purchase narcotics. He said that, upon arriving

at the duplex, a young man ran out of the duplex and a narcotics were sold.

On August 1, 2007, the utility company shut off power to the 3rd Avenue duplex. The duplex only has one meter and the power was shut off to the entire duplex. Defendant Garza and a woman went to the utility company and attempted to put the utilities in the name of the woman. The woman lacked a sufficient deposit to put the utilities in her name. Shortly after being turned away, the current landlord came and paid the utility bill.

In his affidavit, Detective McKichan indicated that he believed the two duplex units to be internally connected. This belief was based upon the previous use of this property as a single family residence. Detective McKichan also based this belief upon previous interaction with the property during an Immigration and Customs Enforcement investigation.

On August 10, 2007, Detective McKichan applied for the search warrant. The search warrant was issued on August 10, 2007, and executed on August 14, 2007.

**B.     Interrogation of Defendant Lugo-Olivares**

On August 14, 2007, Detective McKichan and Special Agent Tom Oliveto questioned Defendant Lugo-Olivares while he was in custody. (*See* Ex. 2, 3.) Prior to advising Defendant of his Miranda rights, a short conversation took place between Special Agent Oliveto and Defendant Lugo-Olivares. During this short conversation, Special Agent Oliveto gave an overview of the investigation of the Defendants. During this overview, Defendant Lugo-Olivares made a few statements indicating that he understood what Special Agent Oliveto was saying and that he did not know who had been arrested. Following this brief exchange, Investigator McKichan told Defendant Lugo-Olivares that he has the right to remain silent, anything he says can and will be used against him, he has the right to an attorney during questioning and that

an attorney would be provided for him, if he could not afford an attorney. After being informed of his rights, Defendant Lugo-Olivares agreed to talk to law enforcement. Defendant Lugo-Olivares had an extended discussion with Detective McKichan and Special Agent Oliveto. The discussion ended after Special Agent Oliveto asked Defendant Lugo-Olivares if he wanted to take a rest and talk later. Defendant Lugo-Olivares stated that he would like to lie down and would speak with them later.

**C.     Recorded Conversations with Defendant Garza.**

Detective McKichan testified that law enforcement recorded conversations with Defendant Garza. These conversations included face-to-face and telephonic conversations. All of these conversations were able to be recorded because Investigator Gunderson was a participant in the conversations

**II.    CONCLUSIONS OF LAW**

**A.     The Search Warrant for the 3rd Avenue Duplex and the North Main Street Property is Supported by Probable Cause.**

Defendant challenges the search warrant issued for the 3rd Avenue duplex and the North Main Street property on its four corners. Searches conducted pursuant to a warrant are reviewed to determine whether the information in the warrant application and supporting affidavit provided probable cause for the search. *Illinois v. Gates*, 462 U.S. 213, 236 (1983). "Probable cause exists when, given the totality of the circumstances, a reasonable person could believe there is a fair probability that contraband or evidence of a crime would be found in a particular place." *United States v. Fladten*, 230 F.3d 1083, 1085 (8th Cir. 2000) (citing *Gates*, 462 U.S. at 236). When determining whether probable cause exists, a court does not evaluate each piece of information independently, but, rather, considers all of the facts for their cumulative meaning. *United States v. Allen,* 297 F.3d 790, 794 (8th Cir. 2002). The task of a court

issuing a search warrant is "simply to make a practical, common sense decision whether, given all the circumstances set forth in the affidavit . . . including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Gates*, 462 U.S. at 238; *see also United States v. Salter*, 358 F.3d 1080, 1084 (8th Cir. 2004).

In reviewing the decision of the issuing court, this Court must ensure that the issuing court " 'had a substantial basis for . . . conclud[ing] that probable cause existed.' " *United States v. Oropesa*, 316 F.3d 762, 766 (8th Cir. 2003) (quoting *Gates*, 462 U.S. at 238-39.) Since reasonable minds may differ on whether a particular search warrant affidavit establishes probable cause, the issuing court's determination is accorded great deference. *United States v. Wajda*, 810 F.2d 754, 760 (8th Cir. 1987) (citing *United States v. Leon*, 468 U.S. 897, 914 (1984)).

The Court concludes that, given the totality of the circumstances described in the affidavit in support of the search warrant, a reasonable person could believe there was a fair probability that narcotics or evidence of narcotics trafficking would be present at both the 3rd Avenue duplex and the North Main Street property. The North Main Street property was used as the meeting location for numerous drug transactions. The 3rd Avenue duplex was visited by drug runners as they picked up stashed narcotics. Furthermore, a confidential reliable informant reported purchasing narcotics from the duplex. Probable cause existed to search both units of the duplex based on evidence that they were connected and being used as one; non-landlord tenants attempted to put the utilities in one name and all the utilities were shared by both units. All of this information provided probable cause for the issuance of the search warrant for both properties, and the version of events recorded in the affidavit has not been refuted by any other

evidence in the record. Therefore, the evidence seized from the properties is admissible and Defendant Lugo-Olivares's Motion to Suppress Evidence Obtained as a Result of Search and Seizure [#93] and Defendant Garza's Motion to Suppress All Evidence Obtained From Unlawful Searches and Seizures [#86] must be denied.

Even if this Court were to determine that the application in support of the search warrant did not provide probable cause for the issuance of a search warrant on the residence, the officers who executed the search warrant on the residence did so in the good faith belief that the search warrant was supported by probable cause, as it had been issued by a district court judge who determined that probable cause existed. The good-faith exception to the exclusionary rule provides that evidence will not be excluded where police officers reasonably rely on a search warrant issued by a neutral judicial officer, even if that search warrant is later declared invalid. *See United States v. Leon*, 468 U.S. 897, 925-26 (1984). The officers in this case reasonably relied on a search warrant that was issued by a neutral judicial officer; therefore, even if the search warrant in this case was not supported by probable cause, the evidence seized as a result of the execution of that search warrant is still admissible.

**B.     Statements by Defendant Lugo-Olivares Were Made After a Knowing, Intelligent and Voluntary Waiver of His *Miranda* Rights.**

Defendant Lugo-Olivares challenges the admission of his statements to law enforcement during his interrogation on August 14, 2007. Before any evidence obtained as a result of a custodial interrogation may be used against a defendant at trial, the Fifth Amendment requires that a defendant in custody and subject to interrogation by law enforcement agents be advised of his constitutional rights and that he make a knowing, intelligent and voluntary waiver of those rights. *Miranda v. Arizona*, 84 U.S. 436, 444 (1966).

A suspect in custody must be informed that he has the following rights: (1) the right to remain silent; (2) that his statements may be used against him in a court of law; (3) that he has the right to an attorney; and (4) that if he cannot afford an attorney, one will be appointed. *Id.* at 444, 478-479. Law enforcement officials must use either this formulation of the warnings or "other procedures [that] are at least as effective in apprising accused persons of their right of silence and in assuring a continuous opportunity to exercise it." *Id.* at 467. Suspects need to be informed of these *Miranda* rights before questioning begins. *Id.* at 469-70. Statements elicited from a suspect in violation of *Miranda* are inadmissible. *Stansbury v. California*, 511 U.S. 318, 322 (1994). After the warnings are given, if the suspect indicates that he wishes to assert these rights, the interrogation must stop. *Miranda*, 384 U.S. at 473-74.

After being informed of their *Miranda* rights, a suspect's waiver of their Fifth Amendment privilege against self-incrimination is only valid if it is voluntarily, knowingly, and intelligently made. *Id.* at 444; *United States v. Syslo*, 303 F.3d 860, 866 (8th Cir. 2002). A waiver is knowing if it is "made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Moran v. Burbine*, 475 U.S. 412, 421 (1986). It is voluntary if it is "the product of a free and deliberate choice rather than intimidation, coercion, or deception." *Id.* It is the Government's burden to show by a preponderance of evidence that the suspect's waiver meets these standards. *Miranda*, 384 U.S. at 473; *Colorado v. Connelly*, 479 U.S. 157, 168 (1986). While courts will not presume a waiver from a defendant's silence or subsequent confession alone, an express waiver is not necessary. *North Carolina v. Butler*, 441 U.S. 369, 373, 375-76 (1979)(explicit waiver not necessary to show defendant waived right to remain silent when defendant volunteered incriminating statements); *United States v. Barahona*, 990 F.2d 412, 418 (8th Cir. 1993)(valid waiver inferred even though defendant refused to sign

9

waiver form because defendant clearly understood rights and was cooperative with police); *United States v. Duque*, 62 F.3d 1146, 1152-53 (9th Cir. 1995)(valid waiver inferred because, after having been given *Miranda* rights and asked if he was "of mind to speak with officers," defendant made incriminating statements).

In this case, Defendant does not contest that his statements were voluntarily made. Defendant does claim, however, that he did not provide a valid waiver of his rights before making the statements.[2] If there is sufficient indication that Defendant understood and agreed voluntarily and knowingly to waive his rights, then the Government has met its burden. If, however, there is not sufficient evidence to indicate that the Defendant understood or agreed to voluntarily and knowingly waive his rights, then this Court must conclude that the Government has not met its burden and the statement should be suppressed.

It is clear from the transcript that Defendant was advised of his *Miranda* rights, indicated that he understood his rights, and voluntarily and knowingly waived his rights. After being informed of his rights, when asked if he would have a discussion, Defendant Lugo-Olivares agreed to speak with law enforcement. The conversation was terminated at the suggestion of law enforcement. Based upon the totality of these circumstances, the Court concludes that Defendant made a knowing and voluntary waiver of his rights under the Fifth Amendment, when he agreed to make a statement to Special Agent Oliveto and Detective McKichan on August 14, 2007. The post-*Miranda* statement is admissible and Defendant Lugo-Olivares's Motion to Suppress Statements, Admissions, and Answers [#94] must be denied.

**C.    Investigator Gunderson Consented to the Recording of Conversations with Defendant**

---

[2] The parties have agreed to the suppression of any statement made by Defendant Lugo-Olivares prior to being advised of his rights and this issue is not before the Court.

**Garza.**

Defendant Garza challenges the admissibility of electronic surveillance in the form of recorded conversations with Investigator Gunderson. The Fourth Amendment is not violated by electronic surveillance when a party to the communication gives his or her consent. *See United States v. White*, 401 U.S. 745, 753 (1971) *(*cited in *United States v. Corona-Chavez*, 328 F.3d 974, 978 (8th Cir. 2003)). It has been long established that a person engaged in a conversation assumes the risk that another party to the conversation might record or otherwise divulge the conversation. *See White*, 401 U.S. at 752-53.

In this case, Investigator Gunderson clearly consented to the recording of the conversations. The purpose of Investigator Gunderson going undercover and using recording equipment was to preserve the conversations for use in this criminal case. Since Investigator Gunderson consented to the recording of his conversations with Defendant Garza, the conversations are admissible and Defendant Garza's Motion to Suppress All Electronic Surveillance Evidence and Any Evidence Derived Therefrom [#85] must be denied.

### III.   RECOMMENDATION

Based upon all the files, records and proceedings herein, **IT IS HEREBY RECOMMENDED** that Defendant Lugo-Olivares's Motion to Suppress Evidence Obtained as a Result of Search and Seizure [#93], Defendant Lugo-Olivares's Motion to Suppress Statements, Admissions, and Answers [#94], Defendant Lugo-Olivares's Motion to Suppress Eyewitness Identifications [#98], Defendant Garza's Motion to Suppress All Electronic Surveillance Evidence and Any Evidence Derived Therefrom [#85], Defendant Garza's Motion to Suppress All Evidence Obtained From Unlawful Searches and Seizures [#86], and Defendant Garza's Motion to Suppress Statements Made By Defendant [#87] be **DENIED**.

Dated: November 9, 2007          s/ *Franklin L. Noel*
                                             FRANKLIN L. NOEL
                                             United States Magistrate Judge

Pursuant to the Local Rules, any party may object to this Report and Recommendation by filing with the Clerk of Court and serving on all parties, on or before **November 28, 2007**, written objections which specifically identify the portions of the proposed findings or recommendations to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief within ten days after service thereof. All briefs filed under the rules shall be limited to 3,500 words. A judge shall make a de novo determination of those portions to which objection is made.

Unless the parties are prepared to stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and cause to be filed by **November 28, 2007,** a complete transcript of the hearing.

This Report and Recommendation does not constitute an order or judgment of the District Court, and it is, therefore, not appealable to the Circuit Court of Appeals.